UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IVAN RAY BLACK,

                    Plaintiff,                          Civil Action No. 10-cv-12663

          v.                                            District Judge Robert H. Cleland
                                                        Magistrate Judge Laurie J. Michelson

CORRECTIONAL OFFICER LETSON,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]

Plaintiff Ivan Black ("Plaintiff" or "Black"), a Michigan Department of Corrections prisoner proceeding *pro se*, brought this case pursuant to 42 U.S.C. § 1983 alleging that Correctional Officer Billy Letson ("Defendant" or "Letson") violated his constitutional rights by either ordering another prisoner to attempt to rape Plaintiff or permitting the attempted rape to take place.[1]  Presently before the Court is Defendant Letson's Motion for Summary Judgment.  (Dkt. 19, Def.'s Mot. Summ. J.)

For the following reasons, this Court RECOMMENDS that Defendant's Motion be GRANTED and this case be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

_____

[1]Plaintiff does not specify which of his constitutional rights have been violated.  It appears that Plaintiff may be alleging a First Amendment retaliation claim or Eighth Amendment failure to protect claim.  Given Defendant's procedural basis for summary judgment, this Court  need not, and does not, resolve this issue.

## I. BACKGROUND

It appears that in March 2010, Defendant Letson filed a misconduct report against Plaintiff because Plaintiff failed to follow a direct order.  (Compl. at 21.)[2]  The report provides that Letson gave Plaintiff, who identifies himself as a transgender individual, an order to submit to a strip search and "bend at the waist [and] spread his buttocks" but Plaintiff refused.  (Compl. at 21.)  The hearing officer found (1) Letson's order"valid and reasonable," (2) that if Plaintiff believed that Letson had acted inappropriately he could have filed a grievance, and (3) that Plaintiff was guilty of misconduct. (Compl. at 22.)  The hearing officer also noted, however, that Plaintiff had filed grievances of sexual harassment against Letson, and that Plaintiff followed Letson's order after a sergeant arrived. (Compl. at 22.)

Plaintiff alleges that while showering on May 7, 2010, another prisoner attempted to rape him.  (Compl. at 11; Dkt. 7, Pl.'s Resp. to Order for Definite Stmt. at ECF 1.)  The allegations regarding Letson's involvement vary.  Plaintiff asserts that the week prior to the incident, Letson made sexual remarks, threatening comments, and harassed Plaintiff.  (Pl.'s Resp. to Order for Definite Stmt. at ECF 1.)  Plaintiff also asserts that prison staff stole (money or mail) from him, and that staff knew that Plaintiff had become aware of their alleged misconduct.  (Compl. at 14.) Plaintiff also avers that he has a single shower detail because of his transgender status, and that his detail should have been enforced.  (Pl.'s Resp. to Order for Definite Stmt. at ECF 1; Dkt. 21, Pl.'s Resp. to Def.'s Mot. Summ. J. at ECF 3.)  Letson allegedly ordered the (attempted) rape, (Compl. at 11), or the (attempted) rape occurred because of his (or other prison staff's) intolerance or

---

[2]The Court has construed Plaintiff's Complaint favorably, but notes that certain parts are difficult to follow – even considering Plaintiff's Response to Magistrate Judge Whalen's Order for More Definite Statement (Dkt. 7).

"inability." (Pl.'s Resp. to Def.'s Mot. Summ. J. at ECF 3.)

## II. ANALYSIS

### A.  Legal Standards

#### 1.  *Summary Judgment Pursuant to Rule 56*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material only if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

3

### 2. Exhaustion Under the Prisoner Litigation Reform Act

The failure to exhaust is an affirmative defense to a civil suit brought by a prisoner. *Jones v. Bock*, 549 U.S. 199, 216 (2007). More specifically, the Prisoner Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 918-19 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The exhaustion requirement is justified on two grounds. First, it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Woodford v. Ngo*, 548 U.S. 81, 94 (2002). Additionally, the requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204.

The exhaustion prerequisite applies to all inmate suits about prison life—regardless of the nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the prisoner must "properly" exhaust his claims, which requires "'complet[ing] the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88) ("Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'").

### 3. MDOC's Policy Directive 03.02.130

MDOC Policy Directive 03.02.130 (effective July 9, 2007) ("Policy Directive") sets forth the procedures that govern prison grievances. (Def.'s Mot. Summ. J., Ex. A.) The Policy Directive

4

provides that prior to filing a grievance, an inmate must attempt to resolve the problem orally with the person-to-be-grieved "within two business days after becoming aware of a grievable issue." (*Id.* ¶ P.)  If this attempt at resolution fails, the inmate then has five business days to file a Step I grievance.  (*Id.*)  In completing grievance forms, "[t]he issues shall be stated briefly but concisely. Information provided shall be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." (*Id.* ¶ R.)  The inmate submits the completed Step I form to "the Step I Grievance Coordinator designated for the facility," who then assigns it to a respondent.  (*Id.* ¶¶ V, X.)

If the inmate is dissatisfied with the Step I response, he may appeal by requesting a Step II appeal form from the Step I Grievance Coordinator.  (*Id.* ¶¶ BB.)  The prisoner must then send a completed Step II grievance form to the Step II Grievance Coordinator within ten business days of the Step I response, or, if the Step I response was untimely (the respondent has 15 days from receipt of a Step I grievance absent an extension), within ten days of the response deadline.  (*Id.*)  The respondent at Step II varies.  (*Id.* ¶¶ DD.)

If the prisoner remains dissatisfied, he may appeal his grievance to Step III.  (*Id.* ¶ FF.)  To do so, he must send a completed Step III form to the Grievance and Appeals Section, located in Lansing, Michigan, within ten business days of receiving the Step II response, or if the Step II response is not timely, within ten business days after the Step II response deadline.  (*Id.* ¶¶ N, FF, GG.)  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II."  (*Id.* ¶ S.)

### B.  Plaintiff's Grievance is Unexhausted

Construing the materials attached to the Complaint in Plaintiff's favor, Plaintiff has arguably

appealed one grievance related to this suit through Step II: N-ARF-2010-03-1053-28B ("ARF

1053").  (Compl. at 10.)[3]  Defendants, however, have come forth with evidence that Plaintiff never

appealed any grievance related to this suit through Step III.  In particular, Richard Russell, Acting

Manager of the Grievance and Appeals Section, avers:

> Once a prisoner's grievance reaches Step III of the grievance process,
> the grievance is date-stamped and audited, and information related to
> the grievance is entered into a grievance tracking database, which can
> be searched and compared with documents contained in hard files.
>
> On January 10, 2011, I caused a search of the Step III grievance
> records maintained in the Grievance and Appeals Section.  The
> search included a review of the Step III grievance inquiry screens for
> the Plaintiff, and a review of the grievance records maintained in the
> Grievance and Appeals Section.
>
> A review of the grievance records and files indicates that Plaintiff
> Black has not filed a grievance appeal through the third step
> regarding the allegations in the lawsuit.

(Def.'s Mot. Summ. J., Ex. B., Russell Aff. ¶¶ 4-6.)  Given the systematic process for logging

grievances, and Russell's affidavit that a proper search of the grievance database has been

performed, Defendant has carried his initial summary judgment burden of demonstrating that

Plaintiff never appealed the ARF 1053 grievance to Step III.  *Cf. Brittenham v. Caruso*, No.

09-14913, 2011 WL 767310, at *2 (E.D. Mich. Jan 14, 2011) *report adopted by* 2011 WL 767305

(E.D. Mich. Feb. 28, 2011) (dismissing case for failure to exhaust where defendants moved for

---

[3]It is unclear whether the grievance, filed on March 11, 2010, and concerning an incident in
either March 2010 or February 2009, is related to the events underlying this suit.  The alleged rape
did not occur until May 2010, but, as noted, Letson and Plaintiff appear to have had some exchanges
prior to the alleged rape.

summary judgment based on a similar affidavit and the plaintiff failed to file a summary judgment response).

In response to Defendant's Motion, Plaintiff argues that exhausting a grievance would not give him the relief he seeks.  (Pl.'s Resp. to Def.'s Mot. Summ. J. at ECF 3.)[4]  In particular, Plaintiff states: "A Grievance on the fact of me being raped is [a] triviality, [the] reason is [that] a Grievance gives me no relief[.] All a Grievance gives me is a transfer[.]" (*Id.*)  However, futility does not excuse a failure to exhaust.  *Williams v. Lafler*, No. 10-11749, 2011 WL 692165 (E.D. Mich. Jan. 31, 2011) *report adopted by* 2011 WL 692685 (E.D. Mich. Feb. 18, 2011); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures"); *Jones v. Douglas*, 108 F. App'x 254, 256 (6th Cir. 2004) ("Futile claims include those claims where there is an inadequate administrative remedy.  Thus, under *Booth*, even futile claims must be exhausted under § 1997e(a) before filing a § 1983 complaint." (internal citation omitted)).  Plaintiff makes no other arguments regarding exhaustion nor has he attached relevant evidence to his Response.  Accordingly, on this record, the Court believes Defendant is entitled to judgment as a matter of law on the exhaustion issue.

---

[4]Plaintiff has asked for the following relief:
   1.) Released from prison with $25,000.00 for rent, food, cloth[ing], and car.
   2.) Reclassified to level one.
   3.) [S]till imprisoned [b]ut on premarin.
   4.) . . . I'm still in prison[,] $25,000.00 put in my account in monthly amounts of $200.00.
(Pl.'s Resp. to Order Definite Stmt. at ECF 2.)

## III.  RECOMMENDATION

For the foregoing reasons, this Court RECOMMENDS that Defendant's Motion be GRANTED and this case be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.  *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (remanding to the district court to dismiss suit without prejudice where inmate failed to exhaust under 42 U.S.C. § 1997e(a)).[5]

## IV.  FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

---

[5]Plaintiff has stated that he is suing more than one Defendant: "[An] individual is not being [s]ued. . . .  I'm charging all correction and RUO staff working that morning."  (Pl.'s Resp. to Order Definite Stmt. at ECF 1; *see also* Compl. at 1).  However, Plaintiff has not named these individuals, and their names do not appear in the Step II grievance response attached to his Complaint.  (Compl. at 10.)  In fact, upon receiving Plaintiff's Response to the Court's Order for a More Definite Statement, District Judge Anna Diggs Taylor issued an Order Amending Case Caption and Directing Service of Complaint on Defendant.  (Dkt. 8.)  That Order provides: "the Court believes that Plaintiff is suing Correctional Officer Letson and that he has stated an arguable claim for money damages from Officer Letson.  Accordingly, the Clerk of Court is ORDERED to amend the caption to read *Ivan Ray Black v. Correctional Officer Letson*."  (Dkt. 8.)  Accordingly, this Court does not address the putative Doe Defendants who are not part of this suit.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise  response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


s/Laurie J. Michelson                            
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  May 12, 2011


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 12, 2011.


s/J. Johnson                                     
Deputy Clerk